**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Shannon CLARKE, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 26, 2012.
Filed July 16, 2013.

James M. Goodwin, Mercer, for appellant.

Robert G. Kochems, District Attorney and Cynthia A. Golkey, Assistant District Attorney, Mercer, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., MUNDY, J., and FITZGERALD, J.*

OPINION BY STEVENS, P.J.:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Mercer County following Appellant's plea of "no contest" to the charge of second-degree misdemeanor cruelty to animals, 18 Pa.C.S.A. § 5511(a)(1)(i). Appellant contends (1) his sentence is illegal in that the trial court had no statutory authority to impose jail time, and (2) his sentence was manifestly excessive.[1] After a careful review, we conclude the trial court had the authority to impose a period of incarceration upon Appellant, and we find no merit to his discretionary aspects of sentencing claim. However, we *sua sponte* conclude the trial court erred in not imposing a fine, as mandated by Section 5511(a)(1). Thus, we remand for the imposition of a fine, but affirm in all other respects.

The relevant facts and procedural history are as follows: On May 8, 2011, Appel-

---

* Former Justice specially assigned to the Superior Court.

1. We have renumbered Appellant's issues for ease of discussion.

lant was arrested for abusing a dog, and the Commonwealth offered to permit him to plead "no contest" to cruelty to animals, graded as a second-degree misdemeanor, under 18 Pa.C.S.A. § 5511(a)(1)(i). On February 15, 2012, Appellant entered such a plea, resulting from his maiming and disfiguring of a dog, which was entrusted to his exclusive care by the dog's owner, Raelynn VanTassel. Specifically, the facts underlying Appellant's plea were set forth at the oral colloquy by the Assistant District Attorney as follows:

[ADA]: May it please the Court. Your Honor, the Commonwealth would establish through testimony and evidence that on or about March 30, 2011, the owner of the dog in question, Miss Raelynn VanTassel, was going into drug detox for five days and asked [Appellant] to take care of that dog while she was gone. The dog was a little bit underweight when she left, otherwise it was in good condition. Upon her return on April 5th, 2011, the dog was substantially hurt. She could tell something was wrong with the dog. And her testimony would establish that [Appellant] indicated that [her dog] was in a dog fight. Upon washing the dog, the wounds got worse, the skin came off and hair came off. Subsequently, the evidence would show that [Appellant] ... dropped the dog off in downtown Sharon. Agent Dorogy picked the dog up and took it to get treatment and the veterinarian would testify this is not wounds sustained from a dog fight, that this is abuse, given that the dog was in the care of [Appellant] at the time.

THE COURT: Exclusive care as I understand it?

[ADA]: Exclusive care, yes, Your Honor. The dog was in [Appellant's] exclusive care at the time the dog was hurt. Miss VanTassel repeatedly asked [Appellant] to tell her if something else happened, to which he remained silent.

The Commonwealth would submit to the jury given that the dog was hurt at the time that he had exclusive care, that he was the one that had the opportunity to hurt it, and the false story and disposing of the animal are indicia of the guilt and I would argue the jury would have no reasonable doubt.

THE COURT: My understanding also is that the evaluation of the dog by the vet showed the teeth on one side of the mouth had been kicked—pushed in.

[ADA]: Punched in. It was the front teeth, which is very unusual for damage to a dog.

THE COURT: They were inward and the dog lost the teeth.

[ADA]: Yes, Your Honor. And the wounds, we would have brought in pictures of the wounds and actually, I have pictures if the Court would need to see them.

THE COURT: No.

[ADA]: Okay. They're gruesome; there is some skin missing where it tracks down to the animal to its connective tissue. Substantial wounds to the animal that rises to the level of disfigurement, [ ]maiming, if not torture.

N.T. 2/15/12 at 10–12.

After accepting Appellant's plea of "no contest," the trial court imposed a sentence of six months to eighteen months in prison, which was "at the low end of the Standard Range of the Sentencing Guidelines [for a second-degree misdemeanor]." Trial Court Opinion dated 7/13/12 at 3. In imposing sentence, the trial court noted, *inter alia,* the offense gravity score was 3 and Appellant's prior record score was 5. The trial court further noted Appellant has a substantial criminal record in that he "has been arrested 22 times and convicted 21 times. He has been on parole 8 times and it was revoked 5 times." Trial Court

Opinion dated 7/13/12 at 4. The trial court failed to impose a fine.

Appellant filed a timely post-sentence motion, presenting challenges to the legality and discretionary aspects of his sentence. The trial court denied the motion, and this timely appeal followed. All Pa. R.A.P. 1925 requirements have been adequately met.

Appellant's first contention is his sentence is illegal in that the trial court had no statutory authority to impose jail time. Appellant specifically contends that, under 18 Pa.C.S.A. § 5511(a)(1), the trial court has no authority to impose a term of imprisonment upon a person convicted of cruelty to animals as a second-degree misdemeanor; but rather, the maximum, sole punishment permitted is a "fine of not less than $500." We disagree.

■ Initially, we note "[a] claim that implicates the fundamental legal authority of the court to impose a particular sentence constitutes a challenge to the legality of the sentence. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction." *Commonwealth v. Infante*, 63 A.3d 358, 363 (Pa.Super.2013) (quotations and quotation marks omitted). Issues relating to the legality of sentence are questions of law, and thus, our standard of review is *de novo* and our scope of review is plenary. *Id.*

Moreover, in construing statutes, we are guided by the rules set forth in the Statutory Construction Act of 1972.[2]

The object of all interpretation is to ascertain and effectuate the intent of the [legislature], a task that is best accomplished by considering the plain language of the [statutes] at issue. However, when the words are not explicit, then the court must consider various other indicia of intent, such as the object and necessity of the rule and the mischief meant to be remedied. The [statutes] should be construed to give effect to all their provisions, and a single [statute] should not be read in a vacuum, especially where there is an apparent interrelationship among [the statutes].

*Commonwealth v. Far*, 616 Pa. 149, 46 A.3d 709, 712 (2012) (citations omitted). "[I]n ascertaining legislative intent, courts may apply, *inter alia,* the following presumptions: that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; and that the legislature intends the entire statute to be effective and certain." *Commonwealth v. Shiffler*, 583 Pa. 478, 879 A.2d 185, 189–90 (2005) (citation omitted).

The question presented here implicates the interpretation of two statutory provisions; namely, 18 Pa.C.S.A. § 5511(a)(1), relating to second-degree misdemeanor cruelty to animals, and 18 Pa.C.S.A. § 1104, which is the default sentencing provisions of the Crimes Code for misdemeanors.

18 Pa.C.S.A. § 5511(a)(1) provides, in relevant part, the following:

### § 5511. Cruelty to animals

(a) **Killing, maiming or poisoning domestic animals or zoo animals, etc.**

(1) A person commits a misdemeanor of the second degree if he willfully and maliciously:

(i) Kills, maims or disfigures any domestic animal of another person or any domestic fowl of another person.

\* \* \*

Any person convicted of violating the provisions of this paragraph shall be sentenced to pay a fine of not less than $500.

---

**2.** Act of December 6, 1972, No. 290 § 3, as amended, 1 Pa.C.S.A. §§ 1501–1991.

18 Pa.C.S.A. § 5511(a)(1)(i) (bold in original).

18 Pa.C.S.A. § 1104 provides, in relevant part, the following:

### § 1104. Sentence of imprisonment for misdemeanors

A person who has been convicted of a misdemeanor may be sentenced to imprisonment for a definite term which shall be fixed by the court and shall not be more than:

(1) Five years in the case of a misdemeanor of the first degree.

(2) Two years in the case of a misdemeanor of the second degree.

(3) One year in the case of a misdemeanor of the third degree.

18 Pa.C.S.A. § 1104 (bold in original).

 When Section 5511(a)(1) is read in conjunction with Section 1104, we conclude Section 5511(a)(1) **requires** the trial court to impose a fine of not less than $500, as well as **permits** the trial court, in its discretion, to impose a term of imprisonment, for cruelty to animals, graded as a second-degree misdemeanor.

Specifically, by its plain terms, Section 5511(a)(1) clearly indicates that "[a]ny person convicted of violating the provisions of this paragraph shall be sentenced to pay a fine of not less than $500." 18 Pa.C.S.A. § 5511(a)(1). Thus, the trial court was required to impose a fine in this case, and since it failed to do so, we find it is necessary to remand for this limited basis.

 Moreover, while Section 5511(a)(1) expressly provides the trial court "shall" impose a fine of not less than $500, it is silent as to whether the trial court "may" also impose a term of imprisonment under the default sentencing provisions of Section 1104(2). There is no express language in either Section 5511 or Section 1104 indicating the crime of cruelty to animals, graded as a second-degree misdemeanor, is excluded from the default sentencing provisions for second-degree misdemeanors. We simply decline to read such a legislative intent into the Statutes.

To do so would mean that a defendant killing, maiming, or disfiguring a domestic animal can only be given a maximum sentence of a $500 fine under Section 5511(a)(1)(i); a defendant poisoning a domestic animal can only be given a maximum sentence of a $500 fine under Section 5511(a)(1)(ii); and a defendant harassing or injuring a guide dog for an individual who is blind or deaf or a service dog for an individual who is physically impaired can only be given a maximum sentence of a $500 fine under Section 5511(a)(1)(iii). There is absolutely no indication anywhere in the legislative intent that such conduct, in all circumstances, merits only a fine. Thus, we conclude the legislature intended the default sentencing provision of Section 1104(2) to apply to a conviction for cruelty to animals, graded as second-degree misdemeanor, and therefore, pursuant to its discretion, the trial court "may" sentence a defendant to no more than two years in prison for such a conviction.

In support of its imposition of a prison term in this case, the trial court noted that, in *Commonwealth v. Hackenberger*, 575 Pa. 197, 836 A.2d 2 (2003), our Supreme Court held that the deadly weapon enhancement provision of 204 Pa.Code § 303.10(a)(2) applied in a case where the appellant was convicted of second-degree misdemeanor cruelty to animals. In so doing, while our Supreme Court noted "a second-degree misdemeanor conviction for cruelty to animals typically carries no jail time," the Supreme Court concluded the plain language of the deadly weapon enhancement provision allowed for its application to the appellant's second-degree misdemeanor cruelty to animals conviction since he "used a deadly weapon in furtherance of the crime." *Hackenberger*, 575 Pa.

at 202, 836 A.2d at 4 (quotation and quotation marks omitted). Our Supreme Court specifically noted that the deadly weapon enhancement provision provided no exclusion for cruelty to animal convictions committed with a deadly weapon, and therefore, the Supreme Court affirmed with regard to the appellant's judgment of sentence of six months to two years less one day in prison. *See id.*

Similar to the trial court, we, too, find applicable the default sentencing provision in this case, which provides for maximum terms of imprisonment for misdemeanors committed under the Crimes Code. Similarly, as our Supreme Court held in *Hackenberger* with regard to the deadly weapon enhancement provision, we find the default sentencing provision of Section 1104 provides no exclusion for the crime of cruelty to animals. Thus, we conclude, in the case *sub judice,* the trial court had the authority to impose a term of imprisonment upon Appellant; however, the trial court erred in failing to impose a fine of at least $500.

Appellant's next contention is, to the extent the trial court had the authority to impose a term of incarceration upon Appellant, the trial court abused its discretion in imposing a manifestly excessive sentence. Specifically, Appellant contends that, in sentencing Appellant to six months to eighteen months in prison, the trial court focused solely on the nature of the crime, without adequately considering the protection of the public and Appellant's rehabilitative needs.

 Appellant's issue presents a challenge to the discretionary aspects of his sentence. *See Commonwealth v. Boyer,* 856 A.2d 149 (Pa.Super.2004). "It is well settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." *Commonwealth v.*

*Mastromarino,* 2 A.3d 581, 585 (Pa.Super.2010) (citation omitted).

Before we reach the merits of this [issue], we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. The third and fourth of these requirements arise because Appellant's attack on his sentence is not an appeal as of right. Rather, he must petition this Court, in his concise statement of reasons, to grant consideration of his appeal on the grounds that there is a substantial question. Finally, if the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Malovich,* 903 A.2d 1247, 1250 (Pa.Super.2006) (citations omitted).

In the instant case, Appellant filed a timely notice of appeal, preserved his claim in his timely post-sentence motion,[3] and included in his appellate brief a separate Rule 2119(f) statement. Thus, we proceed to determine whether Appellant has presented a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. *See Mastromarino, supra.*

 The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *See Commonwealth v. Paul,* 925 A.2d 825 (Pa.Super.2007). "A substantial question exits only when the appellant advances a

---

**3.** Appellant also presented the issue in his court-ordered Pa.R.A.P. 1925(b) statement.

colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa.Super.2013) (quotation and quotation marks omitted). This Court has held that a claim the trial court focused solely on the nature of the offense, without considering the protection of the public or the rehabilitative needs of the appellant, as is required by 42 Pa.C.S.A. § 9721(b), presents a substantial question. *Commonwealth v. Riggs*, 63 A.3d 780 (Pa.Super.2012); *Commonwealth v. Bricker*, 41 A.3d 872 (Pa.Super.2012). Thus, we shall proceed to an examination of the merits of Appellant's discretionary aspect of sentencing claim.

■■■ Our standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

More specifically, 42 Pa.C.S.A. § 9721(b) offers the following guidance to the trial court's sentencing determination:

[T]he sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b).

*Bricker*, 41 A.3d at 875 (quotation omitted). Thus, under 42 Pa.C.S.A. § 9721(b), a "sentencing court must formulate a sentence individualized to that particular case and that particular defendant." *Boyer*, 856 A.2d at 153.

■■■ In the case *sub judice*, our review of the record reveals the trial court considered all relevant factors and did not focus solely on the nature of the crime. For instance, in its opinion, the trial court stated, in relevant part, the following:

To suggest the sentence was manifestly excessive is absurd. [Appellant] has a substantial criminal record. He has been arrested 22 times and convicted 21 times. He has been on parole 8 times and it was revoked 5 times. [Appellant] either badly injured the dog or dropped a badly injured dog off on the road. Either is a cruel and cold act. The sentence was at the low end of the Standard Range of the Sentencing Guidelines. There are insufficient facts to put this case in the Mitigated Range.

Trial Court Opinion dated 7/13/12 at 4. Moreover, as the trial court indicated, it had the benefit of a presentence investigation report. *See* Trial Court Opinion dated 7/13/12 at 4. "[W]here the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Bricker*, 41 A.3d at 876 n. 9 (quotation and quotation marks omitted). Therefore, we find no merit to Appellant's claim the trial court abused its discretion in sentencing Appellant.

For all of the foregoing reasons, we remand for the limited purpose of directing the trial court to impose a fine of at least $500. In all other respects, we affirm.

Remanded, in part; Affirmed, in part. Jurisdiction relinquished.

FITZGERALD, J. FILES A CONCURRING & DISSENTING OPINION.

## CONCURRING AND DISSENTING OPINION BY FITZGERALD, J.:

I agree with the majority that the trial court erred in not imposing a fine, as required by the plain language of 18 Pa. C.S. § 5511(a)(1). However, I disagree with the majority's conclusion that subsection 5511(a)(1) permits imprisonment for a cruelty to animals, misdemeanor of the second degree ("M–2") conviction. Accordingly, I concur and dissent.

Subsection 5511(a)(1), which defines the conduct establishing an M–2 cruelty to animals offense, includes this sentencing provision:

> Any person convicted of violating the provisions of this paragraph shall be sentenced to **pay a fine of not less than $500.**

18 Pa.C.S. § 5511(a)(1) (emphasis added). Subsection 5511(a)(2.1), which defines the conduct establishing a misdemeanor of the first degree ("M–1") cruelty to animals offense, provides the following: [1]

> Any person convicted of violating the provisions of this paragraph shall be sentenced to **pay a fine of not less than $1,000 or to imprisonment for not more than two years, or both**....

18 Pa.C.S. § 5511(a)(2.1)(ii) (emphasis added). While the M–1 subsection explicitly provides for imprisonment, the M–2 subsection does not. *Compare* 18 Pa.C.S. § 5511(a)(1) *with* 18 Pa.C.S. § 5511(a)(2.1)(ii).

Based on Appellant's argument and the trial court's rationale, I discern the following legal questions: (1) whether the sentencing provisions of subsection 5511(a)(1) must be read in conjunction with (a)(2.1)(ii); if so, (2) whether the inclusion of imprisonment in (a)(2.1)(ii), together with the omission of imprisonment in (a)(1), should be interpreted to mean (a)(1) does not allow imprisonment; and (3) whether the general, default M–2 sentencing statute, 18 Pa.C.S. § 1104(2), applies to a 5511(a)(1) conviction. As the trial court noted, this is an issue of first impression.[2] *See* Trial Ct. Op., 1/17/12, at 2.

I note:

> Generally, the best indication of the General Assembly's intent may be found in the plain language of the statute. In this regard, "it is not for the courts to

---

1. Subsection 5511(a)(2) defines a felony of the third degree offense of cruelty to animals, but does not include a corresponding sentencing provision. *See* 18 Pa.C.S. § 5511(a)(2)(i)-(ii).

2. As I discuss *infra*, *Commonwealth v. Hackenberger*, 575 Pa. 197, 836 A.2d 2 (Pa.2003), considered whether a deadly-weapon sentencing enhancement could be applied to an M–2, subsection (a)(1) conviction. The Pennsylvania Supreme Court held that it could, *id.* at 5, but I distinguish that decision.

 Other cases involving imprisonment for a 5511(a)(1) cruelty to animals conviction do not include any discussion of sentencing issues. *See Commonwealth v. Ingram*, 926 A.2d 470, 471–73 (Pa.Super.2007) (addressing suf-

 ficiency of evidence for 5511(a)(1) conviction and affirming sentence of 72 hours to 1 year of imprisonment, 1 year of probation, 500 hours of community service, and restitution); *Commonwealth v. Tapper*, 450 Pa.Super. 220, 675 A.2d 740, 740–43 (1996) (noting defendant was convicted of 5511(a)(1) cruelty to animals, animal fighting, and conspiracy and was sentenced to aggregate eighteen to thirty-six months' imprisonment, without specifying sentence for 5511(a)(1) conviction, and rejecting, *inter alia*, sufficiency of evidence challenge to 5511(a)(1) conviction). *See also Commonwealth v. Russell*, 938 A.2d 1082, 1086 n. 5, 1093 n. 8 (Pa.Super.2007) (noting that defendant did not receive penalty for 5511(a)(1)(i) conviction).

add, by interpretation, to a statute, a requirement which the legislature did not see fit to include." Consequently, "[a]s a matter of statutory interpretation, although one is admonished to listen attentively to what a statute says[;] [o]ne must also listen attentively to what it does not say."

See *Commonwealth v. Wright*, 609 Pa. 22, 48, 14 A.3d 798, 814 (Pa.2011) (citations omitted). A "court cannot, under its powers of construction, supply omissions in a statute, especially where it appears that the matter may have been intentionally omitted. It makes no difference that the omission resulted from inadvertence, or because the case in question was not foreseen or contemplated[.]" *Commonwealth v. Shafer*, 414 Pa. 613, 621, 202 A.2d 308, 312 (Pa.1964) (citation omitted).

Nevertheless, I also note that "it is axiomatic that in determining legislative intent, all sections of a statute must be read together and in conjunction with each other, and construed with reference to the entire statute." *E.D.B. v. Clair*, 605 Pa. 73, 987 A.2d 681, 684 (2009) (citation omitted). "[W]hile statutes generally should be construed liberally, penal statutes are always to be construed strictly, 1 Pa.C.S. § 1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant." *Commonwealth v. Shiffler*, 583 Pa. 478, 879 A.2d 185, 189 (2005) (some citations omitted). "[I]n ascertaining legislative intent, courts may apply, *inter alia*, the following presumptions: that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; and that the legislature intends the entire statute to be effective and certain." *Id.* at 189–90 (citing 1 Pa. C.S. § 1922(1), (2)).

I disagree with the majority's reading of 5511(a)(1) in isolation, and I would read it in conjunction with (a)(2)(ii). While mindful that we cannot "supply omissions in a statute," I also note that subsections of a statute shall be read together. *Shafer*, 202 A.2d at 312; *E.D.B.*, 987 A.2d at 684. Because the M–2 and M–1 sentencing provisions are set forth in the same subsection, 5511(a), I would interpret the omission of imprisonment for an M–2, when read in conjunction with the provision of imprisonment for an M–1, to mean that the legislature did not contemplate allowing imprisonment for an M–2. *See* 18 Pa. C.S. § 5511(a)(1), (a)(2.1)(ii).

Finally, I disagree with the majority that in the absence of imprisonment in subsection 5511(a)(1), the Crimes Code default sentencing provision for an M–2 applies. I would find that this leads to the following absurd result: that (1) for an M–1 cruelty to animals conviction, the legislature specified within the cruelty to animals statute a minimum fine and maximum imprisonment term, setting the latter to be lower than the default maximum in section 1104(1); and (2) for an M–2 conviction, specified a minimum fine but expected the courts to refer to section 1104(2) for the maximum term of imprisonment. *See Shiffler*, 879 A.2d at 189. Furthermore, under the majority's reasoning, M–1 and M–2 convictions of cruelty to animals carry the same maximum imprisonment sentence: two years. For the foregoing reasons, I would interpret section 5511(a)(1) to disallow imprisonment. This holding would be consistent with the principle that "any ambiguity in a penal statute should be interpreted in favor of the defendant." *See Shiffler*, 879 A.2d at 189.

I acknowledge that in the 2003 decision of *Hackenberger*, 575 Pa. 197, 836 A.2d 2, our Supreme Court's ultimate disposition was affirmance of a six to twenty-three month imprisonment sentence on an M–2, subsection (a)(1)(i) conviction. *Id.* at 202, 836 A.2d at 5. The Court held that the deadly weapons sentencing enhancement extended to offenses in which a deadly

weapon was used against an animal, and thus, cruelty to animal convictions. *Id.,* 836 A.2d at 4–5. However, the Court summarized:

> Although a second-degree misdemeanor conviction for cruelty to animals **typically** carries no jail time,[6] the trial court, over [the defendant's] objection, applied the sentencing enhancement for use of a deadly weapon, 204 Pa.Code § 303.10(a)(2), and consequently sentenced [the defendant] to a term of imprisonment of six months to two years less one day. . . .
>
> ---
>
> 6 *See* 18 Pa.C.S. § 5511(a)(1) ("Any person convicted of [a misdemeanor in the second degree for cruelty to animals] shall be sentenced to pay a fine of not less than $500."). Following the shooting in the instant case, the General Assembly enacted section 5511 to upgrade the offense of cruelty to a dog or cat to a misdemeanor in the first degree, which now carries a maximum term of imprisonment of two years. *See id.* § 5511(a)(2.1)(ii) ("Any person convicted of [a misdemeanor in the first degree for cruelty to a dog or cat] shall be sentenced to pay a fine of not less than $1000 or to imprisonment for not more than two years, or both.").

*Id.* at 200 & n. 6, 836 A.2d at 3 & n. 6 (emphasis added).

The Court noted that an M–2 cruelty to animals conviction "typically carries no jail time" and included the above explanatory footnote. *Id.* The Court compared the sentencing provisions for M–2 and M–1 convictions and noted that subsequent to the commission of the offense in that case, the legislature upgraded "cruelty to a dog or cat to a misdemeanor in the first degree, which **now** carries a maximum term of imprisonment of two years." *Id.* Accordingly, the offense in *Hackenberger* was committed before the legislature amended subsection 5511(a)(2.1) to include imprisonment. Furthermore, I emphasize that *Hackenberger* did not address the questions raised in this appeal. Thus, I would not apply *Hackenberger's* approval of an imprisonment sentence in this case.

For the foregoing reasons, I would hold the trial court erred in imposing a sentence of imprisonment on Appellant's section 5511(a)(1) conviction and vacate the sentence.